IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M.L.I.,[1]

        Plaintiff,

v.                                      Case No. 19-4024-JWB

ANDREW SAUL,[2]
*Commissioner of Social Security,*

        Defendant.

MEMORANDUM AND ORDER

Plaintiff seeks review of a final decision by the Commissioner of Social Security denying Plaintiff's application for social security disability benefits. The matter has been fully briefed and is ripe for decision. (Docs. 9, 12, 13.) For the reasons set forth herein, the Commissioner's decision is REVERSED and REMANDED.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a

---

[1] Plaintiff's initials are used to protect privacy.
[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted for Nancy A. Berryhill as the proper Defendant pursuant to Fed. R. Civ. P. 25(d).

reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the

claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson,* 987 F.2d at 1487. *See L.S. v. Saul*, No. 19-1075-JWB, 2019 WL 5455822, at *1–2 (D. Kan. Oct. 24, 2019).

**II. Background and Procedural History**

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income under Title XVI of the Act. (Tr. at 232, 234.) Both applications alleged a disability beginning September 26, 2014, when Plaintiff was 48 years old. (*Id.*) The claims were denied both initially and upon reconsideration by the Commissioner, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). ALJ Susan Toth conducted a hearing in Wichita, Kansas, on February 13, 2017. (Tr. at 36.) Plaintiff testified at the hearing, as did vocational expert Cindy A. Younger. Additional information was gathered and submitted from several sources after the hearing, including from a consultative medical examination requested by the ALJ. (*See* Exhs. 17F-21F.) The ALJ issued an opinion unfavorable to Plaintiff on April 6, 2018. (Tr. at 7.)

The ALJ first concluded Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. at 13.) At step one of the sequential analysis, the ALJ found Plaintiff had engaged in substantial gainful activity ("SGA") since September 26, 2014, the alleged

onset date, because pay stubs shows Plaintiff had earnings above the threshold monthly SGA levels from June of 2016, when he began a job at Rubbermaid, through January of 2017. (*Id.*)

At step two, the ALJ found Plaintiff had the following severe impairments: polymyalgia/polyarthralgia, chronic pain syndrome, depressive disorder not otherwise specified, and cognitive disorder. (Tr. at 13.) The ALJ noted a history of other conditions, including hypothyroidism, headache, B complex deficiencies, anorexia, anemia, and alcohol abuse, but found no functional limitations from these conditions. (*Id.*) The ALJ also noted that Plaintiff's treating physician, Bryan K. Dennett, M.D., had diagnosed Plaintiff with chronic fatigue and immune dysfunction syndrome in January of 2017, but the ALJ found these were not medically determinable impairments because "these diagnoses are not accompanied with any corresponding objective testing or laboratory results." (*Id.*)

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of an impairment listed in the regulations. (*Id.* at 14.) With respect to Plaintiff's mental impairments, the ALJ found they did not satisfy the "paragraph B" criteria of the listings in 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 12.02 or 12.04 because Plaintiff had only moderate (rather than marked) limitations in the functional categories covered by paragraph B. (Tr. at 14-15.) The ALJ further found Plaintiff did not satisfy the paragraph C criteria. (Tr. at 15.)

The ALJ next determined that Plaintiff's RFC was as follows: he can perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b); can occasionally lift and carry up to 100 pounds and can frequently lift and carry up to 20 pounds; can sit for 6 hours at one time without interruption for a total of 7 hours in an 8-hour workday; can stand for 3 hours at one time without interruption for a total of 4 hours in an 8-hour workday; can walk for 2 hours at one time

for a total of 3 hours in an 8-hour workday; can frequently reach in all directions including overhead; can frequently handle, finger, feel and push/pull with the upper extremities; can frequently operate foot controls; can occasionally climb ramps, stairs, ladders, ropes or scaffolds and occasionally balance; can frequently stoop, kneel, crouch and crawl; can frequently operate a motor vehicle and be exposed to humidity and wetness, extreme cold, extreme heat and vibrations; can perform simple, routine and repetitive work but not as an integral part of a team and not at a fast-paced production rate; can occasionally make simple work-related decisions and occasionally interact with supervisors and co-workers but may not interact with the general public. (Tr. at 15-16.)

Based on this RFC, the ALJ concluded at step four that Plaintiff could not perform any of his past relevant work. (Tr. at 22.) At step five, the ALJ found there were unskilled jobs in significant numbers in the national economy that Plaintiff could perform at the light exertional level such as collator operator, marker/tagger, and sub-assembler of electrical equipment. (Tr. at 23.) The ALJ accordingly found Plaintiff was not disabled within the meaning of the Act. (Tr. at 24.)

**III. Analysis**

Plaintiff contends among other things that the ALJ erred in finding that Plaintiff's chronic fatigue syndrome ("CFS") was not a medically determinable impairment ("MDI"). (Doc. 9 at 18.) He notes the ALJ failed to mention or apply SSR 14-1p, the Commissioner's policy for evaluating CFS, and argues this caused the ALJ to erroneously find that Plaintiff's CFS diagnosis did not constitute an MDI. (*Id.* at 19-23.) Plaintiff concedes this was not reversible error at step two because the ALJ proceeded to step three based on a finding that Plaintiff suffered from other severe impairments. (*Id.* at 23.) But Plaintiff argues it caused prejudice at subsequent steps because the

ALJ failed to consider Plaintiff's CFS impairment in assessing the RFC and in determining the effect of CFS on Plaintiff's ability to work. In response, the Commissioner concedes Plaintiff may be correct that the record supported a diagnosis of CFS, but the Commissioner argues the ALJ adequately considered the symptoms stemming from that impairment, such that "the ALJ's finding that Plaintiff did not have medically determinable chronic fatigue syndrome did not change the ALJ's analysis or ultimate decision of non-disability…." (Doc. 12 at 6.) For the reasons that follow, the court rejects the Commissioner's contention that any error in this regard was necessarily harmless.

The ALJ found at step two that Plaintiff suffered from severe impairments of polymyalgia/polyarthralgia, chronic pain syndrome, depressive disorder not otherwise specified, and cognitive disorder. The ALJ found, however, that Plaintiff's CFS diagnosis was not an MDI because the diagnosis lacked "objective testing or laboratory results." (Tr. at 13.) In so finding, the ALJ did not mention, consider, or apply SSR 14-1p, 2014 WL 1371245 (Apr. 3, 2014), which is the Social Security Administration's ruling on when evidence establishes "that a person has a medically determinable impairment of chronic fatigue syndrome and how we evaluate chronic fatigue syndrome in disability claims…." 2014 WL 1371245, *1 (citing 20 C.F.R. 402.35(b)(1)). Such rulings "are binding on all components of the Social Security Administration." *Id.* SSR 14-1p sets forth detailed criteria for determining when CFS may be considered an MDI, including the types of medical signs that can establish an impairment of CFS. As noted, the Commissioner concedes the record might support a finding that Plaintiff's CFS rose to the level of an MDI.

At step two, any error in failing to find an impairment severe is rendered harmless if the ALJ finds other severe impairments that permit the ALJ to proceed to the next step in the sequential process, as the ALJ did here. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he

failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe.") But at step four, the ALJ "must consider the limiting effects of [even] non-severe impairments in determining the claimant's RFC." *Deardorff v. Commissioner, SSA,* 762 F. App'x 484, 486 (10th Cir. Jan. 29, 2019) (citing *Allman*, 813 F.3d at 1326.)

All medically determinable impairments, including non-severe impairments, must be taken into account in determining a claimant's RFC. *Mushero v. Astrue*, 384 F. App'x 693, 2010 WL 2530728 (2010); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' ... when we assess your residual functional capacity.") The court finds no indication in the ALJ's opinion that she considered the limiting effects of CFS in determining Plaintiff's RFC. As noted in SSR 14-1p, "CFS is a systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity." 2014 WL 1371245, *2. "[T]he hallmark of CFS is the presence of clinically evaluated, persistent or relapsing chronic fatigue" that has not been lifelong, cannot be explained by another physical or mental disorder, is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. *Id.* at *3. Diagnostic symptoms can include, among others, self-reported impairments in short-term memory or concentration, muscle pain, multi-joint pain without joint swelling or redness, headaches of a new type, pattern or severity, waking unrefreshed, muscle weakness, disturbed sleep patterns, and respiratory difficulties. *Id.* Progress notes from Plaintiff's treating physician, Dr. Dennett, indicate that Plaintiff reported essentially all of the foregoing symptoms in the course of his treatment between September of 2015 and January of 2017. (Tr. at Exh. 15F.)

The Commissioner basically maintains it does not matter that the ALJ did not consider or address CFS specifically, or Dr. Dennett's diagnosis of it, because the ALJ otherwise thoroughly addressed Plaintiff's alleged symptoms. It is true that the ALJ thoroughly discussed many of Plaintiff's symptoms. She also addressed Dr. Dennett's diagnoses other than CFS and gave them little weight, finding his opinions to be without support from other evidence of record, internally inconsistent, and based on Plaintiff's subjective reports. (Tr. at 21.) But nothing in the ALJ's opinion suggests the ALJ considered these opinions or Plaintiff's symptoms in light of the specific diagnosis of CFS or in light of the nature of CFS, which according to the Commissioner's own standards may be characterized by persistent or *relapsing* fatigue and which cannot be explained by another physical or mental disorder. SSR 14-1p, 2014 WL 1371245, *3. According to SSR 14-1p, when CFS is alleged "we generally need longitudinal evidence because medical signs, symptoms, and laboratory findings of CFS fluctuate in frequency and severity and often continue over a period of many months or years." *Id.* at *5. Such records "reflecting ongoing medical evaluation and treatment from the person's medical sources, especially treating sources, are extremely helpful in documenting the presence of any medical signs or laboratory findings, as well as the person's functional status over time." *Id.* The ALJ did not address these issues.

As this court recently noted, "it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, *i.e.*, where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way." *J.M.V. v. Berryhill,* No. 1801202-JWB, 2019 WL 2393165, *4 (D. Kan. June 6, 2019) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). An ALJ appropriately considering all the evidence, including the diagnosis of CFS, might reach the same

conclusions the ALJ did in this case. But such a result is not a foregone conclusion. The diagnosis of CFS, properly considered, could impact an ALJ's assessment of Plaintiff's limitations. *See J.M.V.*, 2019 WL 2393165, *5. Plaintiff was treated by Dr. Dennett for complaints of fatigue and other symptoms characteristic of CFS between September of 2015 and January of 2017. Plaintiff also previously sought and obtained similar treatment from a different treating physician going as far back as May of 2012 (Tr. at 435). (*See* Tr. at 437 (August 2014), 442 (May 2014), 444 (April 2014), 446 (May 2013), 448 (December 2013), 452 (July 2013), 454 (March 2013), 456 (July 2012)). In evaluating the extent or severity of Plaintiff's limitations, the ALJ did not consider whether such "longitudinal evidence" supported Dr. Dennett's opinion that Plaintiff had physical and mental limitations stemming from CFS. For example, the ALJ did not consider whether the nature of CFS as an impairment that varies in frequency, duration, and severity, could support Dr. Dennett's opinion that Plaintiff could not sit for extended periods (Tr. at 557) or Dr. Mintz's opinion that Plaintiff suffered from a severe cognitive impairment that made it difficult for him to do unskilled work on a daily basis. (Tr. at 496.) The ALJ also gave little weight to the statements of Plaintiff's wife concerning his limitations because the statements did not "outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered a result of her [sic] medically determinable impairments." (Tr. at 22.) The ALJ obviously did not consider the diagnosis of CFS in reaching that finding, because she concluded that CFS was not a medically determinable impairment.

The court cannot conclude that the failure to consider the MDI of CFS was harmless. As noted in *J.M.V.*, applying the harmless error doctrine in this context risks usurping the Commissioner's obligation to find the facts of a case and also risks violating the general rule against post hoc justification of administrative action. *J.M.V.*, 2019 WL 2393165, *4. The

regulations required the ALJ to consider all of Plaintiff's MDIs, including CFS, in reaching a determination of his limitations and ability to work, and the court will not speculate as to how that evidence would have been treated had the ALJ actually considered it.

Because this issue requires a remand for consideration of the evidence concerning CFS, the court does not address the additional arguments raised by Plaintiff, as they may be rendered moot by further findings of the ALJ. The ALJ is free on remand to reopen the hearing, if necessary, and to reconsider any issues as appropriate. Nothing in this opinion is intended to suggest any particular outcome on Plaintiff's application.

**IV. Conclusion**

The Commissioner's decision is REVERSED and REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

IT IS SO ORDERED this 21st day of November, 2019.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE